# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. SULLIVAN,<br><br>Plaintiff,<br><br>v.<br><br>M. D. BITER, et al.,<br><br>Defendants. | Case No. 1:15-cv-00243-DAD-SAB-PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION TO DISMISS<br><br>[ECF No. 27]<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff Michael J. Sullivan is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.

## BACKGROUND

This action proceeds on Plaintiff's claim of conditions of confinement in violation of the Eighth Amendment against Defendant Biter, arising out of allegations of arsenic-contaminated drinking water at Kern Valley State Prison ("KVSP").

Currently before the Court is Defendant's motion to dismiss, filed on September 28, 2017. (ECF No. 43.) Defendant also filed a request for judicial notice in support of the motion. (ECF No. 44.) After being granted several extensions of time, Plaintiff filed an opposition to the motion to dismiss on January 2, 2018. (ECF No. 49.) Defendant filed a reply, also on an extension of time, on January 23, 2018. (ECF No. 52.) The motion is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARDS

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

## III.

## DISCUSSION

**A.  Summary of Plaintiff's Relevant Allegations**

Plaintiff alleges that when he arrived at KVSP in 2010, the drinking water was contaminated with toxic levels of arsenic and "cancer causing agents." (Compl. ¶ 29.) Plaintiff alleges that he has "preexisting chronic life threatening liver disease, a kidney tumor and stomach problems." (Id.) Plaintiff alleges that he has "confronted" the prison officials with knowledge of the tainted water by the filing of inmate grievances. As to Defendant Warden

2

Biter, Plaintiff alleges that each year since October 1, 2010, Warden Biter has issued a notice "acknowledging that the drinking water was contaminated and also acknowledging the risk of adverse health effects including but not limited to increased risk of getting cancer and can or may cause circulatory system problems." (Id. at ¶ 30.)

The notice, attached as an exhibit to Plaintiff's complaint, was signed by Defendant Biter on September 23, 2010, and notified Plaintiff that the running annual average level of drinking water contaminants for wells 1 and 2 exceeded the United States Environmental Protection Agency ("USEPA") standard by .004 and .01 mg/L over the last four quarters. The notice informed Plaintiff that Defendant Biter, along with KVSP staff, was working on planning and construction of an arsenic treatment system to resolve the problem. The notice indicates that Defendant Biter anticipated resolving the problem by October 2011. (Id. at p. 35.)

On December 3, 2010, Plaintiff filed an inmate grievance, requesting that he be provided with bottled water. Plaintiff alleges that on May 11, 2011, Health Program Specialist Bluford and Chief Medical Executive Lopez failed to correct or remedy Plaintiff's concerns by denying Plaintiff's grievance.

**B.  Discussion**

**1.  Arguments**

In Defendant's motion to dismiss, he acknowledges that the Court issued a very thorough screening order in this case, including a review of documents attached to the complaint. Nevertheless, Defendant asserts that certain attachments to the complaint support dismissing Plaintiff's claim in this case because the documents show that the level of arsenic in the water at KVSP did not present a significant risk of harm. Further, Defendant argues that the exhibits attached to the complaint show that he was not aware that the water was substantially dangerous and could not have drawn that inference, and he did not ignore the issue of arsenic levels in the water. Finally, Defendant argues that he is entitled to qualified immunity, because he did not violate any clearly established right regarding the drinking water provided to Plaintiff.

Plaintiff opposes the motion, arguing that the notice signed by Defendant admits sufficient facts for him to state a claim, when his allegations are liberally construed in his favor.

1 Further, he asserts that he suffered specific injuries caused by the polluted water. Plaintiff also argues that he has sufficiently shown deliberate indifference because bottled drinking water was available to staff but not provided to inmates, despite the hazardous levels of arsenic in the inmates' drinking water. Finally, Plaintiff argues that the case law cited by Defendant is not binding or controlling, and that the circumstances and allegations in this case differ from those cases, making them distinguishable.

In reply to Plaintiff's opposition, Defendant argues that Plaintiff cannot plead facts in his opposition or offer speculation to oppose the motion to dismiss. Defendant further argues that the language that Plaintiff relies on in the notice is vague and general, whereas other language in the notice shows that the water did not present an emergency at KVSP, and that there was no expectation of harm.

### 2. Failure to State a Claim

The Eighth Amendment requires prison officials to provide human conditions of confinement, including adequate food, clothing shelter, and medical care, and to take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). A prisoner seeking relief for an Eighth Amendment violation must show that the official acted with deliberate indifference to a threat of serious harm or injury to an inmate. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002). "Deliberate indifference" has both subjective and objective components. A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . must also draw the inference." Farmer, 511 U.S. at 837. Liability may follow only of a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 837.

As noted above, when the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), "[r]eview is limited to the complaint." Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996). "[F]actual challenges to a plaintiff's complaint

have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

Although the Court generally may not consider materials beyond the pleading in ruling on a Rule 12(b)(6) motion to dismiss, there are limited exceptions. For example, a court may consider materials attached to the complaint. See Lee, 250 F.3d at 688-89; Hal Roach Studies, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1155 n.19 (9th Cir. 1989) (copy of assignment attached to appellant's counterclaim as an exhibit properly considered by the court in ruling on a Rule 12(b)(6) motion). Nevertheless, the ultimate question on a motion to dismiss is whether plaintiff has alleged sufficient facts to state a plausible claim for relief, drawing all inferences from his allegations in his favor. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 923-26 (9th Cir. 2001) (declining to consider evidence outside the pleadings in deciding a Rule 12(b)(6) motion to dismiss).

In this case, Plaintiff attached exhibits to his complaint, including a notice signed by Defendant Biter, on September 23, 2010. (Compl. 35.) The notice states that data gathered from monitoring KVSP's wells "over the last four quarters" shows that "the running annual average for wells 1 and 2 is 0.016 mg/L and 0.020 mg/l respectively. This is above the USEPA standard of maximum contaminant level (MCL) of 0.010 mg/L." (Id.) The notice further states that "some people who drink water containing arsenic in excess of the MCL over many years may experience skin damage or circulatory system problems, and may have an increased risk to getting cancer." (Id.) According to the notice, an arsenic treatment system was planned to resolve the issue, and officials anticipated it being resolved by October 2011. Plaintiff relies upon this exhibit in stating his claim.

Plaintiff also alleged that he arrived at KVSP in October 2010, and that the water remained polluted through sometime in 2014. According to Plaintiff, he suffered from pre-existing diseases, including liver disease, a tumor on his kidney, and stomach problems, and forcing him to drink the tainted water aggravated his medical conditions, caused problems with his digestive system and circulatory problems, and gave him an increased risk of cancer. Plaintiff specifically alleges that being forced to drink the water over a prolonged period of years that he

was housed at KVSP "[a]ccelerated and escalated his chronic liver disease." (Id.) He confronted prison officials and requested clean, bottled water to drink, but was denied this request. Based on these allegations, the Court found that Plaintiff sufficiently stated a claim for deliberate indifference to a serious medical need against Defendant.

Defendant points out that the notice states in part that the water contamination was "not an emergency." (Id.) Further, Defendant points to certain language in a May 11, 2011 second-level response to Plaintiff's administrative grievance regarding the denial of his request for bottled water, which was attached to the complaint. That response briefly discusses an arsenic study by R.J. Geller, MD, MPH, of the California Poison Control System. (Id. at 33.) The response states that Dr. Geller found the arsenic levels were insignificant, and quotes Dr. Geller's opinion that he expected no health problems, acute or chronic, to be caused at KVSP by the drinking water. (Id.) Defendant argues that the brief notation about Dr. Geller's opinion clarifies the notice's statement that the water did not present an emergency, and that these exhibits undermine Plaintiff's claim that the water presented a serious risk of harm in violation of the Eighth Amendment.

The documents attached to the complaint, including the portions of the notice discussing the lack of an emergency and the excerpts of Dr. Geller's opinion, might support an inference that Plaintiff was unlikely to suffer harm from his exposure to arsenic. However, on a Rule 12(b)(6) motion to dismiss, the Court must draw all reasonable inferences from Plaintiff's factual allegations in his favor. Liberally construed, Plaintiff has pleaded facts showing that he was forced to drink water tainted with elevated arsenic levels beyond the USEPA's maximum-allowed contaminant levels for a period of several years, and was injured as a result. Plaintiff alleges that the statements by prison officials regarding the arsenic contain "double speak and misleading statements" used to avoid addressing the problem, and that they put off the implementation of the water treatment facility "year after year." (Compl. 29.) Plaintiff further alleges that none of the staff drank the contaminated water and instead drank bottled water, and only the prisoners were forced to drink the contaminated water. (*Id*. at 32.) These allegations, when taken as true as they must be on a Rule 12(b)(6) motion to dismiss, and when construing

all reasonable inferences in Plaintiff's favor, are sufficient to show a plausible serious risk to Plaintiff's health in violation of the Eighth Amendment.

In support of Defendant's argument that Plaintiff's allegations are insufficient to state a claim in this case, Defendant cites several other district court cases in which the allegations by those plaintiffs were found to be insufficient. The Court finds that those cases are distinguishable. Defendant cites Huerta v. Biter, No. 1:13–cv–00916–AWI–GSA–PC, 2015 WL 1062041 (E.D. Cal. Mar. 10, 2015) findings and recommendations adopted 2015 WL 6690042 (E.D. Cal. Oct. 29, 2015). In Huerta, the plaintiff failed "to allege any facts indicating that he suffered any ill effects, other than his fear of some future harm," and therefore the fact that the water violated a regulatory standard was insufficient, by itself, to subject officials to liability under the Eighth Amendment. 2015 WL 1062041 at *4. As noted above, in this case Plaintiff has alleged specific health issues caused or worsened by his exposure to elevated arsenic levels in the water at KVSP. See Valson v. Cate, No. 1:14-cv-01420-DAD-EPG-PC, 2017 WL 4174919, at *3 (E.D. Cal. Sept. 21, 2017) (distinguishing Huerta where plaintiff pleaded physical health issues allegedly suffered from elevated arsenic levels). Likewise, in Ford v. California, No. 1:10-cv-00696-AWI-GSA-PC, 2013 WL 1320807 (E.D. Cal. Apr. 2, 2013), the plaintiff made conclusory allegations that he had sustained "physical and emotional injuries" without any facts in support, unlike Plaintiff in this case. Id. at *4. See also Reed v. Harrington, No. 1:11-cv-01883-AWI-GSA-PC, 2013 WL 1627622, at *3 (E.D. Cal. Apr. 15, 2013) (plaintiff made conclusory unsupported allegations of injury, other than a stomach infection, but also alleged exposure to E. coli bacteria as a competing cause of the infection and admitted to receiving treatment for the infection).

Defendant next argues that the notice attached to the complaint shows that he was not aware of any allegedly serious risk of harm, because the notice states that the water contamination was not an emergency. The notice also discusses the plan for the water treatment system, which Defendant argues shows that he was not deliberately indifferent to the contaminated water. Defendant also seeks for the Court to take judicial notice of a March 31, 2013 Quarterly Status Report ("Report") regarding the construction of the arsenic treatment

7

system at KVSP. The Report states that construction was completed, except the punch list items, by December 31, 2012, and that the punch list items were completed and the project closed out on January 26, 2013. (ECF No. 44-1, at p. 3.)

Plaintiff's claim in this case is based on allegations that Defendant knowingly requiring him to drink the arsenic-contaminated drinking water at KVSP for several years, including by refusing to provide bottled or clean water to drink while the contamination problem was being addressed. Although the notice attached to Plaintiff's complaint contains a statement that the arsenic levels were not an emergency, the notice also acknowledges that the water was contaminated with arsenic above the drinking water standard, and that there were risks of adverse health effects from prolonged exposure. Plaintiff alleges that Defendant continued to issue these notices annually, and that Plaintiff in fact suffered injury from his prolonged exposure. As discussed above, Plaintiff also alleged that the implementation of the water treatment system was put off for years, and that staff, but not inmates, were drinking bottled water in the meantime.

At best, there may be some competing inferences from the exhibits attached to the complaint here, but as discussed above, all reasonable inferences must be construed in the non-movant Plaintiff's favor when deciding a Rule 12(b)(6) motion to dismiss. Therefore, the Court finds Plaintiff has sufficiently pleaded knowing, deliberate indifference in this case. "It is a plausible inference from those allegations that defendants, knowing of elevated levels of arsenic in the drinking water and the risks it posed to plaintiff, 'recklessly disregarded [those] risk[s]' by failing to provide drinking water with safe levels of arsenic while the problem was being remedied." Valson, 2017 WL 4174919, at *3 (quoting Farmer, 511 U.S. at 836); see also id. at *2 n.1.

Defendant has presented some evidence which Plaintiff may have difficulties in overcoming. But at this early stage in the case, Plaintiff does not yet bear the burden of presenting evidence in support of his claim. For these reasons explained above, the Court finds that Plaintiff has sufficiently pleaded the elements of a claim against Defendant for deliberate indifference to a serious risk of harm in violation of the Eighth Amendment.

### 3. **Qualified Immunity**

The Court next addresses Defendant's arguments regarding the defense of qualified immunity. Under the qualified immunity doctrine, government officials acting in their official capacities are immunized from civil liability unless their actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted). When engaging in qualified immunity analysis, district courts are required to consider the law at the time that the plaintiff's injury occurred. Robinson v. Prunty, 249 F.3d 862, 866 (9th Cir. 2001). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Defendant argues that it was not clearly established that it violates the Eighth Amendment to provide water to Plaintiff that was above the USEPA's Maximum Contaminant Level ("MCL") but was nevertheless not dangerous. Defendant relies on the notice and the brief references to Dr. Geller's study, discussed above, to show that he did not believe the water to be dangerous to Plaintiff, and that it was not in fact contaminated at dangerous levels.

At this early stage in the case, the Court cannot assume that the water was not dangerous despite containing arsenic exceeding the MCL, or that Defendant had any specific knowledge or beliefs that the water was not dangerous. These are disputed facts which must be viewed in Plaintiff's favor. The question at issue is instead based on Plaintiff's allegations. Here, Plaintiff alleges that Defendant knowingly forced him to drink unsafe, arsenic-contaminated drinking water by failing to take reasonable actions.

The Supreme Court has long held that prison officials must ensure that inmates receive adequate food and water. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–527 (1984)). More specifically, it has been long established that prison officials may not knowingly subject prisoners to polluted, unhealthy water which presents a serious risk to their health. Helling v. McKinney, 509 U.S. 25, 33 (1993) ("We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery."); Jackson v. Arizona, 885 F.2d 639 (9th Cir. 1989)

(allegations of unsanitary food handling and polluted water which could lead to diseases and death arguably stated an Eighth Amendment violation); McKinney v. Anderson, 924 F.2d 1500, 1507–08 (9th Cir. 1991) ("We have held that . . . polluted water can also violate prisoners' Eighth Amendment rights."); Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996) ("Food that is spoiled and water that is foul would be inadequate to maintain health.").

Defendant argues that the Valley Fever litigation is instructive on this issue. The Court does not find that litigation to be analogous enough to provide specific guidance here. This Court has discussed that the Valley Fever litigation it has reviewed concerned exposure to a naturally occurring fungus that lives in the soil in the Central Valley, which posed the same risks to the surrounding community and was accepted by society, including because prison officials, prison visitors, and the people living in the Central Valley were equally exposed to the risk of contracting Valley Fever. Smith v. Schwarzenegger, No. 1:14-CV-00060-LJO-SA, 2015 WL 2414743, at *15-19 & n.6 (E.D. Cal. May 20, 2015), report and recommendation adopted, 137 F. Supp. 3d 1233 (E.D. Cal. 2015). In contrast, this case concerns allegations of Defendant knowingly forcing the inmate Plaintiff to be exposure to water tainted with arsenic, a well-known and admitted carcinogen, which officials were on notice violated USEPA standards. The problem was supposed to be addressed by a water treatment system that Plaintiff argues was much-delayed, resulting in prolonged exposure and injuries caused by that exposure. Further, he has alleged that prison officials drank safe, clean, bottled water, while inmates could only drink the contaminated water. Given the issue presented at this stage, the Court does not recommend granting dismissal based on qualified immunity.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's motion to dismiss pursuant to Rule 12(b)(6) be denied, in its entirety.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these findings and recommendations, the parties may file

written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **April 25, 2018**

UNITED STATES MAGISTRATE JUDGE